UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GERALD SPENCE,

        Plaintiff,

    v.

G. KAUR, et al.,

        Defendants.

No.  2:16-cv-1828 TLN KJN P

ORDER AND

FINDINGS & RECOMMENDATIONS

I. <u>Introduction</u>

    Plaintiff is a state prisoner, proceeding pro se and in forma pauperis.  In his civil rights complaint under 42 U.S.C. § 1983, plaintiff alleges that defendants Kaur and Chambers retaliated against plaintiff for exercising his First Amendment rights.  (ECF No. 89.)  Defendants' fully-briefed motion for summary judgment is before the court.  As set forth below, it is recommended that the motion for summary judgment be granted.

II. <u>Plaintiff's Allegations</u>

    On December 20, 2019, plaintiff's motion to amend (ECF No. 61) was granted, and plaintiff's third amended complaint was filed as of March 7, 2019.  (ECF No. 90 at 10.)  This action proceeds solely on the retaliation claims raised in plaintiff's verified third amended complaint (ECF No. 89) against defendants Kaur and Chambers based on actions taken prior to the rules violation report ("RVR") hearing on November 18, 2016.  (ECF Nos. 90, 92.)

1

1    Specifically, plaintiff claims that while he was housed at California State Prison-Solano,

2  defendant Kaur, Sr. Librarian, retaliated against plaintiff for filing a form 22 against her by

3  issuing a 128B informational chrono based on plaintiff's alleged conduct at the prison law library

4  on October 25 and November 1, 2016, and following discussions with defendant Chambers, who

5  instructed Kaur to write a RVR based on the 128B, Kaur issued a RVR on the same allegedly

6  false charges.  (ECF No. 89.)

7  III.  Background

8    This action was filed on July 22, 2016.  On March 6, 2017, plaintiff's complaint was

9  dismissed and he was granted leave to file an amended complaint.  His initial complaint did not

10  name, and was wholly unrelated to, his current retaliation claims against defendants Kaur and

11  Chambers.  (See, e.g., ECF No. 14 at 3 (screening order).)

12    On April 27, 2017, plaintiff filed an amended complaint (ECF No. 19) naming new

13  defendants and raising new allegations.  (ECF No. 20 at 1.)  Plaintiff claimed, inter alia, that

14  defendant Kaur retaliated against plaintiff by issuing the false chrono and RVR, and claimed

15  defendant Chambers "heard" the RVR, "knowing it was retaliation."  (ECF No. 20 at 3-5.)

16  Plaintiff included no other facts supporting a retaliation claim against Chambers.  (Id. at 5.)  The

17  amended complaint was dismissed with leave to amend.  (ECF No. 20.)

18    Plaintiff filed a second amended complaint on August 7, 2017, renewing his retaliation

19  claim against defendant Kaur, but not Chambers.  (ECF No. 23.)  This action proceeded solely as

20  to defendant Kaur until plaintiff was granted leave to amend to revive his retaliation claim against

21  defendant Chambers.  (ECF Nos. 90, 92.)  Such leave was granted as to previously-named

22  defendant Chambers because Chambers' specific involvement was allegedly only recently

23  discovered.  (ECF No. 90 at 7.)  Plaintiff's third amended complaint, signed March 1, 2019, was

24  filed as of March 7, 2019 (ECF No. 89).  (ECF No. 90 at 10; 92.)

25  IV.  Legal Standards for Summary Judgment

26    Summary judgment is appropriate when it is demonstrated that the standard set forth in

27  Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

28  ////

2

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1]

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a

---

[1] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged." Id.

dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

By notice issued January 10, 2022 (ECF No. 153-1), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil

1  Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v.

2  Eikenberry, 849 F.2d 409 (9th Cir. 1988).

3  V.  Facts

4      1.  During the events at issue in this case, plaintiff was an inmate in the custody of the

5  California Department of Corrections and Rehabilitation ("CDCR").

6      2.  Plaintiff was housed at California State Prison, Solano ("Solano") at all relevant times.

7      3.  At all relevant times, defendant G. Kaur was employed as a Senior Librarian at Solano.

8      4.  Defendant P. Chambers was employed as a Correctional Sergeant at Solano during the

9  events at issue herein.

10     5.  On October 25, 2016, plaintiff submitted a CDCR 22 Inmate/Parolee Request for

11  Interview, Item or Service Form ("CDCR 22 form") to defendant Kaur.

12     6.  On November 1, 2016, plaintiff submitted a CDCR 22 form to defendant Kaur.

13     7.  Kaur did not express opposition or complaint to plaintiff submitting his CDCR 22

14  forms when plaintiff submitted his CDCR 22 forms to Kaur on October 25 and November 1,

15  2016.

16     8.  On November 2, 2016, Defendant Kaur submitted a CDCR 128B Informational

17  Chrono ("128B") that accused plaintiff of violating California Code of Regulations, Title 15,

18  Section 3005, based on his conduct in the law library on October 25, 2016, and November 1,

19  2016.  (ECF No. 153-4 at 21 (Moseley Decl. appending Kaur's 128B); ECF No. 155 at 19 (Petty

20  Decl.); Spence Dep. 90-93).[2]

21     9.  On November 10, 2016, Defendant Kaur submitted a CDCR 115 Rules Violation

22  Report ("RVR") that accused plaintiff of violating California Code of Regulations, Title 15,

23  Section 3005, based on his alleged conduct in the law library on October 25, 2016, and November

24  1, 2016.[3]  (Spence Dep. 95, 96 & Ex. G; Petty Decl. ¶ 6 & Ex. D at 8-16 (ECF No. 155 at 43-

25  ────────────────
   [2]  Plaintiff disputes UDF No. 8, claiming that the alleged conduct occurring on October 25 and
26  November 1, 2016, relied on by defendant Kaur was pretextual.  (ECF No. 158 at 28.)  But the
   CDC-128B confirms that Kaur accused plaintiff of such conduct; and the fact that plaintiff
27  contests such conduct as pretextual does not rebut UDF No. 8.

28  [3]  Plaintiff disputes UDF No. 9, stating the RVR had "no basis in fact or law."  (ECF No. 158 at

1   58).)

2        10.  Kaur never told plaintiff that she had authored the 128B or the RVR in order to

3   retaliate against him.

4        11.  On November 10, 2016, prison officials received a CDCR 602 Inmate/Parolee Appeal

5   Form from plaintiff regarding Kaur's 128B.  This grievance was given the log number SOL-16-

6   02509.[4]  (Moseley Decl. Exs. 1, 3 at 2 (ECF No. 153-4 at 14).)

7        12.  On November 18, 2016, defendant Chambers conducted a disciplinary hearing

8   regarding the RVR that Kaur submitted on November 10, 2016.[5]  (Pl.'s Ex. A (ECF No. 158 at

9   33); Petty Decl. Ex. D at 14 (ECF No. 155 at 49).)

10       13.  On November 18, 2016, defendant Chambers found plaintiff guilty, RVR Log

11  #01405624, and as punishment, plaintiff lost 30 days of yard recreation privileges.  (Pl.'s Ex. A

12  (ECF No. 158 at 33, 40); Petty Decl. Ex. D at 14, 19 (ECF No. 155 at 49, 54).)

13       14.  Plaintiff had access to the Solano law library during the period from November 18,

14  2016, through December 18, 2016.

15       15.  By modification order dated December 29, 2016, prison officials voided RVR Log

16  #01405624, "in the interest of justice," and removed it from plaintiff's central file.  (Petty Decl.

17  Ex. D at 7, 30 (ECF No. 155 at 42, 65); Pl.'s Ex. B (ECF No. 158 at 48).)  CDO R. Mitchell

18  handwrote that "Per modification order log #CSP-S-16-02710, this RVR is voided "in the interest

19  of justice."  (Pl.'s Ex. C (ECF No. 158 at 49).)

20       16.  California regulations identify a CDCR 128B Informational Chrono as a

21  memorandum "which is used to document information about inmates and inmate behavior."  Cal.

22

23  28.)  But UDF No. 9 fact merely confirms that Kaur accused plaintiff of such conduct and does
    not address the merits of the RVR.

24

25  [4]  Plaintiff disputes UDF No. 11, citing his Exhibit B.  However, plaintiff's Exhibit B is his
    grievance CSP-S-16-02710, not SOL-16-02509.  (ECF No. 158 at 44.)

26

27  [5]  As to UDF 12 and 13, plaintiff claims that the "actual" hearing date was 12/18/16, but provided
    no evidence to rebut his own evidence that the hearing took place on November 18, 2016.  (Pl.'s
    Ex. A (ECF No. 158 at 33).  Indeed, in his own opposition to the instant motion, plaintiff recounts

28  that the hearing was held at 09:19:09 hours on November 18, 2016.  (ECF No. 158 at 7.)

Code Regs. Tit. 15, § 30000.

17.  California regulations do not identify a 128B as a form of discipline. Cal. Code Regs. Tit. 15, § 3312.

18.  There is no evidence that the 128B had any negative impact on plaintiff's sentence, prison privileges, or other conditions of confinement.

19.  Defendants contend that plaintiff has no evidence showing Kaur submitted the 128B for a retaliatory purpose, other than the proximity in time between plaintiff's submission of the CDCR 22 forms and Kaur's submission of the CDCR 128B chrono.  (Spence Dep. 87-89; 94, 96-100.)  Plaintiff argues that circumstantial evidence is sufficient to demonstrate retaliation.

20.  Defendants argue that plaintiff has no evidence showing Kaur or Chambers submitted the RVR for a retaliatory reason, other than the proximity in time between plaintiff's submission of the CDCR 602 grievance form for appeal log No. SOL-16-02509 and Kaur's submission of the RVR.  (Spence Dep. 87-89, 94; 96-100.)  Plaintiff counters that his direct evidence of the retaliatory motive of defendants Kaur and Chambers is the dismissal of the RVR and their failure to explain why the RVR was written by them.

21.  At all times relevant to this case, CDCR provided its inmates with a comprehensive administrative appeals process in which inmates may appeal a decision, action, condition, policy, or omission made by the department or its staff, which the inmate believes has had a material adverse effect on their welfare.

22.  The Solano Appeals Office received, reviewed, and maintained all first and second level inmate appeals concerning non-medical issues.

23.  The CDCR Office of Appeals ("OOA") received, reviewed, and maintained all third and final level inmate appeals concerning non-medical issues.

24.  The OOA level of review is the final level of review in CDCR's administrative appeals process, and a final decision at this level is generally required to exhaust an inmate's administrative remedies for an appeal.

25.  Plaintiff was aware of the administrative grievance process and had exhausted several grievances before the events at issue.

////

26. Plaintiff filed three potentially relevant grievances:  Appeal Log Nos. SOL-16-02509, SOL-17-00019,[6] and SOL-16-02710.  (Chan Decl. Exs. A & B; Pl.'s Dep. 106-12 & Exs. H, I, & J; Petty Decl. ¶ 6 & Ex. A; Moseley Decl. ¶¶ 8-11 &. Exs. 1 & 2.)

27. In Appeal Log No. SOL-16-02509, submitted on November 8, 2016, plaintiff alleged Kaur had retaliated against him by placing a false 128B in his central file regarding plaintiff's behavior in the law library on October 25, 2016, and November 1, 2016.[7]  (Petty Decl. (ECF No. 153-4 at 13.)

28. Plaintiff completed the administrative exhaustion process for Appeal Log No. SOL-16-02509 at the third level of review on May 22, 2017.  (Moseley Decl. Exs. 1 & 3 (ECF No. 153-4 at 13).)

29. Plaintiff did not exhaust appeal log no. SOL-17-00019 at the third level of review.  Plaintiff concedes that appeal SOL-17-00019, in which he complained that Kaur and her supervisors violated plaintiff's due process rights, is not relevant to this case (ECF No. 158 at 9, 29), and in his deposition, confirmed that he chose not to resubmit such appeal to the third level (Pl.'s Dep. at 107.)  In light of plaintiff's concessions, and because in such appeal plaintiff did not grieve the alleged retaliatory nature of the 128B or the RVR, no further discussion of appeal log no. SOL-17-00019 is warranted.

30. In appeal log no. SOL-16-02710, submitted by plaintiff on November 25, 2016, it identified the subject of his appeal as "retaliation, gender discrimination and double jeopardy,"

---

[6]  The parties refer to grievance SOL-*16*-00019, but the documentary evidence confirms the grievance was numbered SOL-*17*-00019.  (See, e.g., ECF No. 153-4 at 35.)  In plaintiff's answer to interrogatory no. 1, he identified appeal CSP-S-1700019.  (Chan Decl. Ex. B-002 (ECF No. 153-6 at 213).)  In SOL-17-00019, plaintiff stated he filed a staff complaint against defendant Kaur for false reporting on a 128-B and subsequently an RVR using the verbatim info from the 128-B in violation of his due process rights. Id.  (ECF No. 153-4 at 35.)  Plaintiff sought the immediate termination of Kaur, K. Williams and P. Ditto.  (ECF No. 153-4 at 35.)

[7]  It appears plaintiff attempted to expand the nature of the appeal in his request for second level review:  "Kaur authored a fictitious 128B, which she morphed into a 115-A."  (ECF no. 153-4 at 15.)  However, the appeal responses addressed plaintiff's appeal as originally submitted:  solely challenging the 128-B informational chrono.  (ECF No. 153-4 at 13, 19.)

and appealed the November 18, 2016 guilty finding by defendant Chambers based on the alleged

retaliatory 128-B issued by defendant Kaur, claiming the RVR was an exact duplicate of the

128B. (Petty Decl., Ex. D at 8 (ECF No. 155 at 43, 45). Such appeal was partially granted at the

first level of review, voiding the RVR "in the interest of justice" on double jeopardy grounds

because the 128B and RVR were identical in wording. (Petty Decl. Ex. D at 6-7 (ECF No. 155 at

41-42).)

31. On January 5, 2017, plaintiff requested a second level review of appeal log no. SOL-

16-02710. (Petty Decl. Ex. D at 9 (ECF No. 155 at 44).) The appeal was denied on February 7,

2017. (Petty Decl. Ex. D at 1-2 (ECF No. 155 at 36-37).)

32. Plaintiff did not exhaust appeal no. SOL-16-02710 at the third level of review.[8]

(Moseley Decl., Exs. 1 & 2 (ECF No. 153-4 at 7-11); Petty Decl., Ex. A (ECF No. 155 at 6).)

33. There is no evidence that plaintiff exhausted, to the third level of review, a relevant

grievance regarding his retaliation claim as to the RVR issued on November 18, 2016.

VI.  Failure to Exhaust

A.  Exhaustion Standards

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be

brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion

requirement applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other

wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731,

741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other

---

[8] Plaintiff does not dispute that he did not appeal grievance Log No. SOL-16-02710 at the Third Level of Review, but contends that pursuant to CCR § 3084.9(g)(2), it is only "serious" rule violations that can be appealed to the third level. (ECF No. 158 at 29.) Plaintiff argues that administrative violations are limited to second level. Id. But in his answers to interrogatories, he responded that "each appeal was submitted to the third level." (ECF No. 153-6 at 213.)

1  critical procedural rules[.]" Woodford v. Ngo, 548 U.S. 81, 90 (2006). The Supreme Court has

2  also cautioned against reading futility or other exceptions into the statutory exhaustion

3  requirement. See Booth, 532 U.S. at 741 n.6; Ross v. Blake, 578 U.S. 632, 639-40 (2016).

4  Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion

5  requirement by filing an untimely or otherwise procedurally defective administrative grievance or

6  appeal. See Woodford, 548 U.S. at 90-93. "[T]o properly exhaust administrative remedies

7  prisoners 'must complete the administrative review process in accordance with the applicable

8  procedural rules,' [ ] - rules that are defined not by the PLRA, but by the prison grievance process

9  itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88). See also

10  Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's

11  requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

12        In California, prisoners may appeal "any policy, decision, action, condition, or omission

13  by the department or its staff that the inmate or parolee can demonstrate as having a material

14  adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).[9]

15  At the time of the incidents at issue here, inmates in California proceed through three levels of

16  appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal

17  form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the

18  Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal. Code

19  Regs. tit. 15, § 3084.7. Under specific circumstances, the first level review may be bypassed. Id.

20  The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a

21  prisoner's administrative remedies. See id. § 3084.7(d)(3). A California prisoner is required to

22  submit an inmate appeal at the appropriate level and proceed to the highest level of review

23  available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005). An inmate is required to

24  "list all staff members involved and shall describe their involvement in the issue." Cal. Code

25  Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known and available to

26

27  [9] As noted by defendants, CDCR enacted new regulations effective June 1, 2020. (ECF No. 153-2 at 10.n.2; ECF No. 162 at 5 n.7.) The regulations set forth and applied herein were in effect

28  during the incidents at issue herein.

him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, §§ 3084.2(a)(4). An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. See Albino v. Baca, 747 F.3d 1162, 1172-73 (9th Cir. 2014). When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as effectively unavailable. Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available).

B. Discussion

Under the PLRA "all inmates must [ ] exhaust all available remedies" before filing a claim in court. Ross, 578 U.S. at 641. "To comply with the PLRA's exhaustion requirement in California, [p]laintiff was required to follow a three-step grievance process: first submit a grievance Form 602 to the prison appeals office and then, depending on the response, appeal that decision to a second and third level." Saddozai v. Davis, 35 F.4th 705 (9th Cir. May 23, 2022). The PLRA's exhaustion requirement is an affirmative defense, meaning the "defendants must plead and prove" failure to exhaust. Fordley v. Lizarraga, 18 F.4th 344, 350-51 (9th Cir. 2021) (citation omitted).

Here, defendants pled failure to exhaust in their answers. (ECF Nos. 93 at 5; 104 at 4.) Defendants argue that plaintiff's amended complaint controls the exhaustion analysis; plaintiff contends the operative third amended complaint controls.

Plaintiff's position is supported by Saddozai, a recent case issued after briefing closed. Id., 35 F.4th 705. In Saddozai, the plaintiff did not fully exhaust his administrative remedies

1   before he filed his initial complaint.  Id. at 708.  However, the parties agreed Saddozai "had fully

2   exhausted by the time he filed his third amended complaint, which the district court deemed the

3   'operative complaint.'"  Id.  The Ninth Circuit explained "that a prisoner can cure [exhaustion]

4   deficiencies through later filings, regardless of when he filed the original action" because

5   "[e]xhaustion requirements apply based on when a plaintiff files the operative complaint."  Id.

6   (quotation marks and citations omitted).  Accordingly, the Ninth Circuit held that the date of

7   plaintiff's operative complaint "controls the PLRA exhaustion analysis, and the district court

8   erred in dismissing [the case] for lack of exhaustion."  Id. (citing Ramirez v. Collier, 142 S. Ct.

9   1264, 1276 (2022) as "not irreconcilable" with Ninth Circuit precedent); see also Jackson v.

10  Fong, 870 F.3d 928, 934 (9th Cir. 2017) ("we concluded that the amended complaint controlled

11  the PLRA exhaustion analysis").  Thus, in light of Saddozai, the issue of exhaustion in this case

12  turns on whether plaintiff exhausted available administrative remedies by March 7, 2019, the date

13  his third amended complaint was deemed filed.

14              1.  Appeal Log No. SOL-16-02509

15              It is undisputed that plaintiff exhausted SOL-16-02509 at the third level of review on May

16  22, 2017 (UDF 28), prior to the filing of his third amended complaint, that plaintiff had access to

17  an administrative appeal process, and he does not argue that such remedies were unavailable.  In

18  his deposition, plaintiff confirmed that it was appeal no. SOL-16-02509 that exhausted his claims

19  herein.  (Pl.'s Dep. at 109-10, Ex. I.)  Thus, the issue is whether SOL-16-02509 exhausted

20  plaintiff's claims raised in this action.

21              Defendants contend that such appeal only exhausted plaintiff's retaliation claim against

22  defendant Kaur based solely on her issuance of the 128B chrono because the initial appeal did not

23  mention the RVR.  Plaintiff does not specifically address such argument in his opposition,

24  arguing instead that the issue of exhaustion is "moot, meritless, and misleading, requiring no

25  response."  (ECF No. 158 at 13.)

26              First, it was not possible for appeal SOL-16-02509 to exhaust a challenge to the RVR

27  because the appeal was submitted on November 8, 2016, before the RVR was issued on

28  November 10, 2016 (UDF No. 9).  Second, in appeal SOL-16-02509, plaintiff identified the

subject of his appeal as: "Staff complaint: harassment/retaliation by false reporting."  (ECF No. 153-4 at 14.)  He stated that he was served with a 128B regarding two incidents in the law library involving Kaur, October 25 and November 1, 2016, which, as reported by Kaur, were untrue. (ECF No. 153-4 at 14, 16.)  Plaintiff explained that such incidents were reported only after plaintiff submitted to Kaur two form 22s addressed to Kaur's supervisors complaining about Kaur's conduct.  (ECF No. 153-4 at 16.)  Plaintiff alleged that the conduct complained of in the 128B was not reported to anyone prior to November 2, 2016, demonstrating retaliation and harassment.  As relief, plaintiff sought removal of the 128B from his central file and appropriate discipline for willful misconduct orchestrated to deprive plaintiff of his right to access the courts." (ECF No. 153-4 at 14.)

Thus, defendants are correct that appeal SOL-16-02509 only addressed the issuance of the purportedly false 128B by Kaur.

Further, the undersigned declines to find that appeal no. SOL-16-02509 exhausted a putative claim that defendant Chambers was involved in the preparation of the 128B chrono.  It is undisputed that the 128B issued on November 2, 2016.  (UDF 8.)  Despite plaintiff's late discovery of the emails between Kaur and Chambers, Chambers' email reflects that he emailed Kaur on November 10, 2016, after Kaur issued the 128B.  (ECF No. 158 at 116.)  Plaintiff adduced no evidence to the contrary.  Moreover, Chambers' email told Kaur that corrections were needed:  "change your report to a CDCR Rule Violation Report (115)."  (ECF No. 158 at 116 (emphasis added).)  But by then, Kaur had already issued the 128B.  Plaintiff points to no other evidence demonstrating that defendant Chambers was involved in the creation of the 128B.  The only other email from Chambers, dated November 18, 2016, informed Kaur that Chambers would hear the RVR issued to plaintiff.  (ECF No. 158 at 128.)

Finally, review of the appeal reflects that by the time plaintiff sought third level review, on February 21, 2017, he was attempting to add his allegation that Kaur issued the RVR in retaliation for his protected conduct.  (ECF No. 153-4 at 15) ("Kaur authored a fictitious 128B, which she morphed into a 115-A.")  (ECF No. 153-4 at 15.)  None of the responses plaintiff received at any level of review addressed the RVR.  Rather, all responses solely addressed the

1    ////

2    128B. Plaintiff admits he was familiar with the administrative appeal process and thus was aware

3    that he could only grieve single issues in one 602, not multiple issues.

4        Plaintiff does raise the issue of his late discovery that defendant Chambers was involved

5    in the issuance of the RVR which precluded plaintiff from exhausting such issue. But because

6    plaintiff's argument relates to the RVR, it is addressed in connection with Appeal Log No. SOL-

7    16-02710 in which plaintiff initially challenged the RVR and raised his retaliation claims as to

8    defendant Kaur issuing the RVR.

9        Also, plaintiff challenges the interviews conducted during the appeal process. Two

10    interviews were conducted by Sgt. Cornwell at the first level, and by Lt. R. Gray at the second

11    level, yet neither requested clarification or additional facts as to any defendant or allegation;

12    therefore, "[i]nsufficiency is waived." (ECF No. 158 at 11.) To the extent plaintiff contends that

13    prison officials are required to flesh out an inmate's claims in an administrative grievance during

14    appeals interviews, such contention is unsupported and not in line with prison regulations

15    requiring prisoners to describe the problem and the action requested, limit the appeal to one issue

16    or related set of issues, and identify each staff member involved in the alleged misconduct. Cal.

17    Code Regs. Tit. 15, § 3084.2(a).

18        Thus, the court finds that appeal SOL-16-02509 solely exhausted plaintiff's retaliation

19    claim against defendant Kaur based on her issuance of the purportedly false 128B.

20              2. <u>Appeal Log No. SOL-16-02710</u>

21        Plaintiff argues that appeal SOL-16-02710 identified the subject of his appeal as

22    "retaliation, gender discrimination and double jeopardy," named both defendants Kaur and

23    Chambers, and provided detailed allegations in sections B and D. (ECF No. 158 at 4, 10.)

24    Plaintiff's statements in such appeal put prison officials on notice and therefore, he argues,

25    exhaustion is waived or admitted. (ECF No. 158 at 10.)

26        However, it is undisputed that plaintiff did not appeal SOL-16-02710 through the third

27    level of review. (UDF 31, 32.) In his deposition, plaintiff asserted he did not appeal this

28    grievance to the third level because he believed his administrative remedies were exhausted once

1   prison officials voided the RVR.  (Pl.'s Dep. at 110-13.)  However, such argument fails because

2   the RVR was voided at the first level of review, yet plaintiff proceeded to seek a second level

3   review on the issues of retaliation, gender discrimination, and double jeopardy.  (ECF No. 155 at

4   43.)

5        On the other hand, in his opposition, plaintiff now claims he did not appeal to the third

6   level because the grievance was "administrative" or "minor" in nature under section 3084.9(g)(2)

7   and Fontana v. Haskin, 262 F.3d 876, 877 (9th Cir. 2001).  (ECF No. 158 at 10.)  Defendants

8   contend plaintiff's reliance on section 3084.9(g)(2) is unavailing because it "only provides that

9   '[i]nmates who wish to exhaust their administrative remedies for 'serious' disciplinary issues

10  pursuant to section 3315 must appeal through the third level of review.'"  Id.  While California

11  regulations do provide a narrow exception to the three level review process for minor disciplinary

12  actions (see Cal. Code Regs. Tit. 15, § 3087(b)(1) (2017)),[10] defendants argue such exception

13  does not apply here because plaintiff's appeal no. SOL-16-02710 involved more than an

14  administrative RVR, raising multiple serious issues.  (ECF No. 162 at 5.)

15       The undersigned agrees with defendants.  Plaintiff's reliance on California Code of

16  Regulations title 15, section 3084.9(g)(2) is unavailing, because if plaintiff intended to exhaust

17  his retaliation claims, which are serious, plaintiff was required to exhaust to the third level.  And,

18  as argued by defendants, plaintiff cannot avail himself of the narrow exception to the three level

19  review process for minor disciplinary actions (see Cal. Code Regs. Tit. 15, § 3087(b)(1) (2017)),

20  because plaintiff's appeal no. SOL-16-02710 involved more than an administrative RVR,

21  specifically accusing Kaur of gender discrimination and retaliation.

22       In addition, Fontana, 262 F.3d at 877, offers plaintiff no support.  In Fontana, the Ninth

23  Circuit addressed the dismissal of a civil rights complaint, evaluating the pleading under the

24  liberal pleading standards provided in Rule 8 of the Federal Rules of Civil Procedure.  Id.  There

25  _____

26  [10]  Section 3087(b)(1) provided: "A second level of review shall constitute the department's
    final action on appeals of disciplinary actions classified as 'administrative' as described in section

27  3314, or of minor disciplinary infractions documented on the Counseling Only Rules Violation
    Report, pursuant to section 3312(a)(2), and shall exhaust administrative remedy on these

28  matters."

1   is nothing in Fontana that addresses what facts are required to be set forth in a prisoner's

2   administrative appeal to exhaust claims raised in a civil rights complaint.  Id.

3         Moreover, the second level response to appeal SOL-16-02710 advised plaintiff that "this

4   issue may be submitted for a Third Level of Review."  (ECF No. 155 at 37.)  Plaintiff was

5   partially granted relief at the first level by the voiding of the RVR, but he appealed his retaliation

6   issue to the second level.  In order to exhaust his retaliation claim, plaintiff was required to pursue

7   such issue to the third level of review because he was informed he could do so.  See Brown, 422

8   F.3d at 935 ("[t]he obligation to exhaust 'available' remedies persists as long as some remedy

9   remains 'available.'"); see also Sapp, 623 F.3d at 826 (declining to excuse exhaustion because

10  Sapp could not have reasonably believed that administrative remedies were effectively

11  unavailable after being instructed on how to further appeal).  Just as in Sapp, plaintiff could not

12  have reasonably believed that his administrative remedies were not available after being advised

13  he could submit them to the third level of review.

14        Finally, plaintiff is correct that he was unaware of defendant Chambers' specific

15  involvement in the preparation and issuance of the RVR until certain emails were obtained

16  through discovery in this action.  Plaintiff was unable to bring an administrative appeal

17  addressing Chambers' specific involvement in November of 2019 when plaintiff discovered such

18  involvement because it would likely be rejected by prison officials as untimely.

19        The evidence reflects that defendant Kaur involved defendant Chambers, as shown by the

20  emails submitted by plaintiff.  As noted above, it was apparent to plaintiff on November 25, 2016,

21  when he submitted appeal no. SOL-16-02710, that he believed Kaur issued the RVR in retaliation

22  for plaintiff submitting the form 22s on Kaur, and he named Chambers based on her involvement

23  in the RVR.  Moreover, in his request for second level review, plaintiff alleged that Kaur and her

24  female supervisor approved of the retaliatory RVR.  (ECF No. 155 at 44.)  Thus, given such late

25  discovery of Chambers' role, this court might have found that appeal no. SOL-16-02710

26  exhausted plaintiff's retaliation claims against Chambers because, as argued by plaintiff, he is not

27  required to litigate administrative appeals like a lawsuit, setting forth every possible legal theory.

28        But plaintiff did not pursue appeal no. SOL-16-02710 to the third level of review.  The

16

1    Supreme Court has made clear that prisoners are required to exhaust administrative remedies

2    prior to filing in federal court, and lower courts may not carve out exceptions to the exhaustion

3    requirement. Ross, 578 U.S. at 639-40. The Ninth Circuit has suggested in dicta that a prisoner

4    may lack a meaningful opportunity to exhaust when he does not have knowledge regarding the

5    nature of his injury. Ngo v. Woodford, 539 F.3d 1108 (9th Cir. 2008).[11] But here, the record

6    demonstrates plaintiff was aware of his claim that the RVR was issued in retaliation when he

7    brought appeal no. SOL-16-02710 on November 25, 2016, and raised such claim therein. (See

8    also ECF No. 158 at 44, 46.) Plaintiff could have pursued his retaliation claim concerning Kaur's

9    alleged retaliatory issuance of the RVR in his appeal SOL-16-02710. But it is undisputed that

10    plaintiff did not bring appeal no. SOL-16-02710 to the third level of review. Therefore,

11    plaintiff's putative challenge to the RVR is unexhausted and must be dismissed both as to

12    defendant Kaur and as to defendant Chambers.

13                             3. Plaintiff's Remaining Arguments

14          Plaintiff's contention that defendants' motion should have been brought under Rule 12(b)

15    is unavailing. The PLRA exhaustion requirement is not jurisdictional but rather creates an

16    affirmative defense that defendants must plead and prove. See Jones, 549 U.S. at 216 ("[I]nmates

17    are not required to specially plead or demonstrate exhaustion in their complaints."); Albino, 747

18    F.3d at 1168. A defendant may move for dismissal under Federal Rule of Civil Procedure

19    12(b)(6) "[i]n the rare event" that a prisoner's failure to exhaust is clear on the face of the

20    complaint. See Albino, 747 F.3d at 1168 & 1169. More typically, defendants may move for

21    summary judgment under Federal Rule of Civil Procedure 56 and produce probative evidence that

22    proves a prisoner's failure to exhaust. See id. If there are material facts in dispute, the court

23    should deny summary judgment. See id. Thus, the instant motion was properly brought under

24    Rule 56.

25          Also, in his motion, plaintiff refers to an inmate declaration signed by an inmate

26

27

28

---

[11] In Ngo, the Ninth Circuit applied statute of limitations principles in determining whether a claim accrued for purposes of exhaustion under the PLRA, but ultimately held that the prisoner "had every opportunity to appeal earlier because he knew the restriction's scope and duration as soon as the prison classification committee imposed it." Ngo, 539 F.3d at 1110.

1   "McCloud," which plaintiff claims was "filed in this court." (ECF No. 158 at 1.)  The court has

2   reviewed the docket and found no inmate declaration from an inmate named McCloud.  Although

3   the court initially ordered plaintiff to seek permission to correspond with McCloud while they

4   were housed at the same prison (ECF No. 130), the court later learned that McCloud was

5   transferred, and directed McCloud to file his declaration (ECF No. 139).  After expiration of the

6   sixty-day time frame, no declaration by McCloud was received.[12]

7           In conclusion, because plaintiff failed to exhaust, through the third level of review, an

8   administrative appeal challenging the RVR as issued in retaliation for plaintiff's protected

9   conduct, plaintiff's retaliation claims based on the RVR, as against both defendants Kaur and

10   Chambers, are dismissed without prejudice.

11   VII.  <u>Retaliation</u>

12           In light of the above findings, the undersigned turns to plaintiff's claim that defendant

13   Kaur took an adverse action against plaintiff by issuing the 128B about his conduct in the law

14   library on October 15 and November 1, 2016.

15           A.  <u>Standards Governing Retaliation Claims</u>

16           "Prisoners have a First Amendment right to file grievances against prison officials and to

17   be free from retaliation for doing so."  <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012)

18   (citing <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009)).  A viable retaliation claim in the

19   prison context has five elements:  "(1) An assertion that a state actor took some adverse action

20   against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

21   chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

22   advance a legitimate correctional goal."  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir.

23   2005).

24           The Ninth Circuit has found that preserving institutional order, discipline and security are

25   legitimate penological goals which, if they provide the motivation for an official act taken, will

26   _____

27   [12]  The court received declarations from five putative inmate witnesses.  Three inmates had no
     recollections of the underlying incidents.  (ECF Nos. 140-42.)  Two inmates described their

28   recollections, none of which pertain to exhaustion of administrative remedies.  (ECF Nos. 143,
     146.)

1  defeat a claim of retaliation.  Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994); Rizzo v.

2  Dawson, 778 F.2d 527, 532 (9th Cir. 1985) ("Challenges to restrictions of First Amendment

3  rights must be analyzed in terms of the legitimate policies and goals of the correctional institution

4  in the preservation of internal order and discipline, maintenance of institutional security, and

5  rehabilitation of prisoners.").  The burden is thus on plaintiff to allege and demonstrate that

6  legitimate correctional purposes did not motivate the actions by prison officials about which he

7  complains.  See Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("[Plaintiff] must show that

8  there were no legitimate correctional purposes motivating the actions he complains of.").

9         B.  Discussion

10        Here, plaintiff attempts to conflate the RVR into the court's evaluation of the 128B,

11 claiming that it was the 128B "which formed the basis for the unnecessary and unjustified RVR

12 which was the same rose by another name."  (ECF No. 158 at 15.)  He argues that "[e]ven if the

13 128B fails to qualify as adverse, the RVR based on the same allegations certainly does."  (ECF

14 no. 158 at 17.)  However, because plaintiff failed to exhaust his challenge to the RVR, the

15 undersigned is unable to review them together.  Rather, the court evaluates whether the 128B,

16 standing alone, constitutes an adverse action.  The undersigned finds that it does not.

17        The undersigned is persuaded that the 128B cannot be considered an "adverse action."  A

18 CDCR 128-A counseling chrono is issued when "minor misconduct recurs after verbal counseling

19 or if documentation of minor misconduct is needed."  Cal. Code Regs. tit. 15, § 3312(a)(2); In re

20 Perez, 7 Cal. App. 5th 65, 75 (2016), as modified on denial of reh'g (Jan. 4, 2017).  A CDCR

21 128-B general chrono is used to document information about inmate behavior.  Cal. Code Regs.

22 tit. 15, § 3000; In re Cabrera, 216 Cal. App. 4th 1522, 1526 n.4 (2013).  The regulations do not

23 require that any action be taken as a result of a counseling or informational chrono.  See Cal.

24 Code Regs. tit. 15, §§ 3000, 3312.  The 128B issued by Kaur does not require that any action be

25 taken against plaintiff, although it expresses concern about plaintiff's future conduct.  By

26 contrast, an RVR results in disciplinary proceedings being instituted against the inmate.  See id.,

27 § 3312(a)(3) (setting forth procedure for instituting disciplinary proceedings via RVR).  Indeed,

28 the injuries plaintiff alleges to have suffered are the result of the RVR -- thirty days' cell

1    restriction which deprived him of library and yard access.

2           Similarly, a 128B counseling chrono, standing alone, would not chill a person of ordinary

3    firmness.  If plaintiff were correct that Kaur's mere use of a form 128B would chill an ordinary

4    prisoner from exercising his First Amendment rights, "then even the most innocent

5    documentation -- simple record-keeping -- by a prison employee of any fact regarding a prisoner

6    would constitute a chilling effect under Rhodes."  Pelayo v. Smith, 2020 WL 13412871, *5 (N.D.

7    Cal. May 7, 2020) (citing Rhodes, 408 F.3d at 568-69).

8           Further, as identified by another California district court:

9                  [N]umerous district courts within the Ninth Circuit have concluded
                   that informational and counseling chronos do not constitute adverse
10                 actions.  See, e.g., Samano v. Copeland, 2008 WL 2168884, at *2
                   (E.D. Cal. May 23, 2008) (dismissing retaliation claim on ground
11                 that counseling chrono did not constitute adverse action), report and
                   recommendation adopted, 2008 WL 2858217 (E.D. Cal. July 24,
12                 2008); Williams v. Woddford, 2009 WL 3823916, at *3 (E.D. Cal.
                   Nov. 13, 2009) (dismissing retaliation claim on ground that alleged
13                 filing of the false informational chrono was not adverse action);
                   Jenkins v. Caplan, 2010 WL 3742659, at *2 (N.D. Cal. Sept. 16,
14                 2010) (granting summary judgment for defendant where plaintiff
                   failed to present evidence that chrono constituted adverse action); see
15                 also Garcia v. Blahnik, 2017 WL 1161225, at *4 (S.D. Cal. Mar. 29,
                   2017) (granting summary judgment on retaliation claim on ground
16                 that general chronos did not threaten plaintiff and thus did not
                   constitute adverse action); Martin v. Desha, 2017 WL 1354140, at *2
17                 (E.D. Cal. Apr. 13, 2017) (dismissing retaliation claim on ground that
                   informational chrono did not constitute adverse action, even though
18                 plaintiff alleged that it might be used to deny parole; reasoning that
                   multiple factors play into parole decision).
19

20   Heilman v. Furster, 2018 WL 2588900, at *10-11 (C.D. Cal. May 1, 2018) (finding false

21   Custodial Counseling Chronos are not adverse actions).

22          The undersigned agrees with defendants that the 128B issued to plaintiff by defendant

23   Kaur is not an adverse action for plaintiff's retaliation claim.  Thus, defendant Kaur is entitled to

24   summary judgment.

25   VIII.   Qualified Immunity

26          Defendants move for summary judgment on the grounds that defendant Kaur is entitled to

27   qualified immunity on plaintiff's claim related to the issuance of the 128B.

28          A.   Governing Standards

Officers are entitled to qualified immunity under § 1983 unless (1) the officers violate a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018). Courts have the discretion to decide which prong to address first, in light of the particular circumstances of each case. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

"Clearly established" means that the statutory or constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful. See Wesby, 138 S. Ct. at 589; Vos v. City of Newport Beach, 892 F.3d 1024, 1035 (9th Cir. 2018). This is a "demanding standard" that protects "all but the plainly incompetent or those who knowingly violate the law." Wesby, 138 S. Ct. at 589 (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)). To be "clearly established," a rule must also be dictated by controlling authority or by a robust consensus of cases of persuasive authority. Wesby, 138 S. Ct. at 589; see Gordon v. County of Orange, 6 F.4th 961, 969 (9th Cir. 2021) ("Ultimately, the prior precedent must be 'controlling -- from the Ninth Circuit or Supreme Court -- or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction.") In examining whether a right is clearly established, courts are to define the law to a "high degree of specificity," and not "at a high level of generality." Wesby, 138 S. Ct. at 590. The key question is "whether the violative nature of particular conduct is clearly established" in the specific context of the case. Vos, 892 F.3d at 1035 (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015)). Although it is not necessary to identify a case that is "directly on point," generally the plaintiff needs to identify where an officer acting under similar circumstances was held to have violated a federal right. Wesby, 138 U.S. at 577; Vos, 892 F.3d at 1035; Felarca v. Birgeneau, 891 F.3d 809, 822 (9th Cir. 2018). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (citations omitted).

B. Discussion

Defendants argue that even if a constitutional violation occurred, defendant Kaur is entitled to qualified immunity because no Ninth Circuit decision has recognized an inmate's constitutional right to a truthful counseling chrono (128B). As discussed above, multiple district

courts in the Ninth Circuit have held that a 128B informational chrono does not constitute an adverse action for purposes of retaliation, even if the chrono contains false information.  (ECF No. 162 at 11) (citing see, e.g., Martin, 2017 WL 1354140 at *2 ("A 128B chrono by itself is generally not an adverse act for purposes of retaliation, even if the chrono contains false information."); Garcia v. Blahnik, 2017 WL 1226863, *13 (S.D. Cal. Feb. 3, 2017) (granting summary judgment for defendant where plaintiff failed to present evidence that general chrono constituted adverse action); Jenkins v. Caplan, 2010 WL 3742659, at *2 (N.D. Cal. Sept. 16, 2010) (granting summary judgment for defendant where plaintiff failed to present evidence that chrono constituted adverse action).)  Because it was not clearly established that a reasonable person in Kaur's position would violate a prisoner's First Amendment rights by filing a 128B against the prisoner, defendants contend Kaur is entitled to qualified immunity.

The undersigned agrees there is no clearly established law recognizing a prisoner's right to a truthful counseling chrono.  Such finding is bolstered by the multiple unpublished district court cases as cited in Heilman v. Furster, supra, finding that counseling chronos do not amount to adverse actions for purposes of a First Amendment retaliation claim.  Plaintiff cites no authorities to the contrary, and argues only that "the prohibition against retaliatory punishment is clearly established law in the Ninth Circuit for qualified immunity purposes."  (ECF No. 158 at 22) (citing Pratt, 65 F.3d at 805 and n.4 (9th Cir. 1995).)  Pratt does not apply here because the Ninth Circuit did not address the issue of qualified immunity; but simply reaffirmed that an allegation of retaliatory prison transfer and double-cell status sufficiently states a claim of retaliation.  Id.  Furthermore, plaintiff's definition of clearly established law lacks the required context, attempting to define the law too generally, thereby failing to comport with binding authority.  Wesby, 138 S. Ct. at 590; Vos, 892 F.3d at 1035.

For the reasons set forth above, defendant Kaur is entitled to qualified immunity on plaintiff's claim that Kaur issued a false 128B against plaintiff in retaliation for his protected conduct under the First Amendment.

IX.  Plaintiff's Motion to Strike

Within his opposition, plaintiff included a motion to strike.  First, plaintiff contends that

defendants' motion for summary judgment was untimely filed because the declaration of service attests to placement of the motion in the internal mail collection system at the Office of the Attorney General rather than placed with the U.S. Postal Service. (ECF No. 158 at 23.) However, as argued by defendants (ECF No. 162 at 11-12), plaintiff fails to acknowledge that defendants' declaration of service also states that correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business. (ECF No. 153-7 at 1.) Plaintiff provides no evidence that the motion was not placed in the U.S. Mail on January 10, 2022, the court's deadline for filing pretrial motions (ECF No. 151). Therefore, plaintiff's motion is denied.

Second, plaintiff argues that defendants' motion should be stricken because the motion contains extraneous documents relating to Case No. 1170 WBS AC, or the extraneous documents should be voluntarily withdrawn. (ECF No. 158 at 23.) As argued by defendants (ECF No. 162 at 12), plaintiff fails to identify specific pages or portions of defendants' motion include such unrelated case. Indeed, while the alleged unrelated case appears to be from the Eastern District of California based on the judge's initials WBS AC, plaintiff failed to provide the entire case number. Accordingly, plaintiff's motion to strike on such basis is wholly unsupported and is denied.

Third, plaintiff contends that the "defendant's [sic] declarations in support of their motion for summary judgment are false regarding SOL-16-2710 and must be struck or cited as such." (ECF No. 158 at 23; see also ECF No. 158 at 13.) Plaintiff provided no other argument or evidence in support of his conclusory motion. As argued by defendants (ECF No. 162 at 12), only two declarations related to the motion on exhaustion grounds: (1) Howard E. Moseley (ECF No. 153-4 at 1-5), which contains no information about grievance SOL-16-2710; and (2) A. Petty (ECF No. 155 at 1-3), which merely identified appeal SOL-16-2710 as one of the three appeals submitted by plaintiff (ECF No. 155 at 3). To the extent plaintiff sought to strike either declaration, plaintiff's motion is wholly unsupported and is denied.

////

23

X.   <u>Conclusion</u>

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion to strike (ECF No. 158 at 23) is denied.

Further, IT IS RECOMMENDED that defendants' motion for summary judgment (ECF No. 153) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 12, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/spen1828.msj

24